JOURNAL ENTRY AND OPINION
Appellant, The State of Ohio ex rel. City of Cleveland, is appealing the trial court's judgment denying appellant's petition to abate a nuisance. The alleged nuisance occurred on the premises of appellee, Beehive Tavern, which was owned by appellee, Floyd Whittington. For the following reasons, we reverse and remand.
Timothy Melena testified that he is the councilman for Ward 17, where the Beehive Tavern is located. In late 1999, many of Melena's constituents complained about drug dealing, gambling, underage drinking and weapons violations at the Beehive Tavern.
Alex Brazynetz, who lived and worked in the neighborhood, testified that the Beehive had a reputation for rowdiness and fights. Over the last six months, the premises had become noisier and more crowded.
Jean Borlinghausen testified that she lives in a house directly behind the Beehive Tavern. She has seen people in the parking lot of the Beehive smoking marijuana. She has seen people outside the Beehive exchange items for money. She thinks the items were drugs.
Detective Dvorak of the Cleveland Police Department testified that confidential reliable informants made three controlled drug buys of cocaine in the Beehive Tavern. Two of the controlled buys were made from bar employees. A search warrant was obtained and executed. The police found eighty-five grams of marijuana in thirty separate baggies, crack cocaine and a crack pipe. These items were thrown on the dance floor by unknown persons. Floyd Whittington, the bar owner, was found in possession of less than one gram of cocaine. Another male had two bags of cocaine, each containing less than one gram. In the basement, the officers found suspected packaging material for cocaine, suspected cut from cocaine and a spoon that someone had used to cook crack cocaine. There were four guns in Whittington's office, three of which were loaded. Six people were arrested in the raid.
Barbara Hamila testified that she sold the bar to Floyd Whittington in October of 1999. The liquor license had not yet transferred to Whittington.
Floyd Whittington testified that there were as many as sixty patrons in the bar at once. There were video cameras installed in the bar, that he monitors for illegal activities. He also has video surveillance of the parking lot. The baggies and ties were in the basement because they were used to package sandwiches. Whittington had a baggie of drugs on him when arrested because he had picked it up off the floor of the bar, and did not realize what the bag contained. He did not know of any of his employees that used or sold drugs. Whittington has since withdrawn his application to have the liquor license transferred to him.
 I.
Appellant's first assignment of error states:
 AS A MATTER OF LAW, THE TRIAL COURT ERRED IN HOLDING THAT, PLAINTIFF MUST PROVE KNOWLEDGE, ACQUIESCENCE, AND PARTICIPATION, ON THE PART OF A COMMERCIAL PROPERTY OWNER, IN ORDER TO FIND THAT OWNER GUILTY OF THE CIVIL OFFENSE OF MAINTAINING A NUISANCE UNDER R.C. 3767.01.
The trial court's journal entry states that the court can not order an injunction on a nuisance unless the State proves that the owner negligently or knowingly acquiesced or participated in the creation or perpetration of the nuisance. This statement is partially incorrect.
The civil offense of maintaining nuisance does not require proof that owner of the property acquiesced to or participated in the creation of the nuisance. State ex rel. Pizza v. Rezcallah (1998), 84 Ohio St.3d 116. An injunction closing the place where the nuisance is found for one year can not be issued against an owner who did not acquiesce or participate in the creation or perpetration of nuisance. Id. If the court determines the owner acted in good faith, and was innocent of any acquiescence to or participation in the conduct establishing the nuisance, and took prompt action to abate the nuisance, no closure order shall be issued under R.C. 3767.06(A) and no tax shall be imposed pursuant to R.C. 3767.09. Id. The court may still impose an abatement order and permanent injunction to stop the nuisance, even if the owner was not negligent and did not have knowledge of the nuisance. Id.
The trial court was correct in that an injunction closing the property for one year can not be imposed against an owner who did not acquiesce or participate in the nuisance. An injunction order to stop the nuisance can be imposed, however. See State ex. rel. Pizza, supra.
Accordingly, this assignment of error is sustained.
 II.
Appellant's second assignment of error states:
 THE TRIAL COURTS FINDING THAT APPELLANT HAD NOT PROVEN, BY CLEAR AND CONVINCING EVIDENCE, THE EXISTENCE OF A NUISANCE AT THE SUBJECT PREMISES IS AGAINST THE WEIGHT OF THE EVIDENCE.
Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. See C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279 . The credibility of witnesses is primarily for the trier of fact. See Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. If our review of the record does not reveal any basis for denying the petition, or any competent, credible evidence in support of the trial court's decision, the decision may be reversed as against the manifest weight of the evidence. Sroka v. Sroka (1997), 121 Ohio App.3d 728.
A nuisance means any place where beer or intoxicating liquor is sold where the operation of that place:
 . . . substantially interferes with public decency, sobriety, peace, and good order. "Violation of law" includes, but is not limited to . . . any violation of section 2925.03 (drug trafficking) of the Revised Code.
R.C. 3767.01(C)(3). A premises upon which a felony violation of Chapter 2925 (drug offenses) of the Revised Code occurs constitutes a nuisance subject to abatement. R.C. 3719.10, see also R.C. 3767.01(C)(1). To prove a nuisance under R.C. 3719.10, a plaintiff must show by clear and convincing evidence that chronic felony violations of R.C. Chapter 2925 occurred on the premises. State ex rel. Freeman v. Pierce (1991),61 Ohio App.3d 663, 670; State ex rel. Miller v. Anthony (1995),72 Ohio St.3d 132, 135. Only proof of a de facto `violation' of criminal law, not a de jure conviction is required. State ex rel. Freeman, supra, at 667.
Here, there was evidence that: (1) Confidential reliable informants purchased cocaine in the Beehive on three separate occasions; (2) Marijuana in separate baggies was found by police during a raid, but they were not in possession of anyone; (3) The owner of the bar, Whittington, was in possession of less than one gram of cocaine; (4) a neighbor observed suspicious exchanges in the parking lot; (5) the councilman received complaints about drug activity. The sale or possession of cocaine in an amount less than five grams, or of crack cocaine in an amount less than one gram is a fifth degree felony. See R.C.2925.11(C)(4)(a); 2925.03(C)(4)(a).
The trial court apparently believed Whittinger's testimony that he did not knowingly possess cocaine. The court's journal entry stated that the State did not establish that Whittington or any of his employees committed a crime or were indicted on felony drug charges. It is not required that the owner or the employees must participate in the nuisance. See State ex. rel. Pizza, supra. Even if Whittington did not commit a felony violation, there was still considerable evidence that chronic drug trafficking was taking place at the bar.
There was no evidence disputing the three separate controlled buys of cocaine at the Beehive. Also, on another occasion, someone at the bar was in possession of 85 grams of marijuana in thirty baggies, which indicated drug trafficking. There was no reason to disbelieve the councilman's evidence concerning drug sale complaints. There was also no reason to disbelieve Ms. Borlinghausen's testimony concerning the suspicious transactions. There was clear and convincing evidence of chronic drug violations on the premises. The trial court had no reason to deny appellant's petition. The court's decision was not supported by competent, credible evidence.
The trial court found that there must be either evidence of the general reputation of the place or an admission or finding of guilt of prohibited conduct. See R.C. 3767.05(A). R.C. 3767.05(A) states that evidence of the general reputation of the place or an admission or finding of guilt of criminal conduct is admissible for the purpose of proving the existence of the nuisance and is prima-facie evidence of the nuisance. The statute does not say that such evidence is required. Moreover, the evidence indicated that the Beehive had a general reputation for illegal drug sales.
The trial court also denied the injunction because the State did not notify the department of liquor control of the abatement action. See R.C. 3767.03. R.C. 3767.03 provides that when a nuisance action against the holder of a liquor permit is brought, the State shall notify the department of liquor control. The State filed its action against the Beehive and Whittington, and technically, Mrs. Hamila was the holder of the liquor permit. Regardless, there is no authority that R.C. 3767.03
requires notification to the liquor control division in order to obtain abatement of a nuisance.
Accordingly, this assignment of error is sustained.
The decision of the trial court is reversed, and this case is remanded for further proceedings consistent with this opinion.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellants recover of said appellees their costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, J., CONCURS JAMES D. SWEENEY, J., DISSENTS (SEE ATTACHED DISSENTING OPINION)
 ________________ ANN DYKE, JUDGE